[No. A109532. First Dist., Div. One. Dec. 28, 2005.]

MUI UNG, Plaintiff and Respondent, v.
HENRY KOEHLER, Defendant and Appellant.

COUNSEL

Law Offices of Daniel P. McLoughlin, Daniel P. McLoughlin; Law Offices of Andrea Adam Brott and Andrea Adam Brott for Defendant and Appellant.

Kirby & McGuinn and Martin T. McGuinn for United Trustees Association as Amicus Curiae on behalf of Defendant and Appellant.

McInerney & Dillon and Alexander Bannon for Plaintiff and Respondent.

OPINION

**MARGULIES, J.—**

## I. INTRODUCTION

Plaintiff Mui Ung gave a promissory note, secured by a deed of trust on real property, to defendant Henry Koehler. Some 11 years after the note became due, defendant, claiming nonpayment, recorded a notice of default against the property in anticipation of a nonjudicial foreclosure sale. Plaintiff filed this action to enjoin the sale, contending that the statutory time limit for exercising the power of sale in the deed of trust had expired.

At common law there was no time limitation on the exercise of the power of sale in a deed of trust. The Legislature reversed that rule of law in 1982 when it passed the Marketable Record Title Act (Act) (Civ. Code, § 880.020 et seq.),[1] which has been held in prior decisions to impose a time limit on such exercise of either 10 or 60 years from the "final maturity date" of the underlying debt. Notwithstanding this authority, plaintiff argued that defendant's right to nonjudicial foreclosure under the deed of trust expired four years, rather than 10 or 60 years, after the note became due. She premised this argument on a provision of the Act, section 882.030, which had not been considered in the prior decisions. The trial court accepted her argument and granted summary adjudication precluding sale of plaintiff's property under the deed of trust.

We conclude that the 10-year and 60-year time limits for the exercise of a power of sale in a deed of trust imposed by section 882.020 are not overridden by section 882.030. Further, we conclude that once the beneficiary of a deed of trust has become entitled to claim the 60-year time limit of

---

[1] All statutory references are to the Civil Code, unless otherwise indicated.

section 882.020, subdivision (a)(2), the beneficiary does not lose that entitlement merely by filing a notice of default that specifies the "final maturity date" of the underlying debt. Accordingly, we reverse the decision of the trial court.

## II. BACKGROUND

Plaintiff borrowed money from defendant in December 1991. The loan was evidenced by a promissory note that was secured by a deed of trust to two real properties in Oakland. The note matured on December 31, 1992. More than 11 years after the note matured, on April 12, 2004, an agent for defendant recorded a notice of default against one of the two properties for which defendant held a deed of trust. Soon after, plaintiff filed this lawsuit to prevent defendant from enforcing the security interest provided by the deed of trust, contending that the statutory time period for enforcement had long since expired.

Plaintiff first filed a motion for a preliminary injunction to prevent defendant from conducting a nonjudicial sale of the property. The trial court granted the motion in an extensive written opinion. The opinion first noted that there was no dispute that *judicial* foreclosure on the deed of trust was precluded by section 2911, which extinguished that remedy upon expiration of the four-year statute of limitations applicable to the underlying promissory note. The trial court then turned to the availability of nonjudicial foreclosure. Prior to passage of the Act, the court noted, the law was clear that exercise of the power of sale in a deed of trust was not subject to any time limit at all. For the first time, the Act established such time limits. As the court recognized, California decisions had held that one of the Act's provisions, section 882.020, subdivision (a), imposes a time limit for nonjudicial foreclosure of either 10 or 60 years from the "final maturity date" of the debt. Despite acknowledging these authorities, the trial court refused to follow them because they did not consider the effect of section 882.030. Concluding that section 882.030, in concert with section 2911, acts to extinguish the remedy of nonjudicial foreclosure upon expiration of the statute of limitations on the underlying debt, the trial court preliminarily enjoined defendant from conducting a nonjudicial sale of plaintiff's property.

In response to subsequent cross-motions for summary adjudication, the trial court reaffirmed its ruling, granted summary adjudication for plaintiff on her claims against defendant, and made its injunction against foreclosure permanent. Because the trial court found that defendant's time to foreclose had expired under section 882.030, it had no occasion to reach plaintiff's

alternative argument that defendant was entitled, at most, only to the expired 10-year time limit of section 882.020, subdivision (a)(1).[2]

## III. DISCUSSION

### A. The Time Limits Applicable to Exercise of a Power of Sale

Defendant contends that, contrary to the ruling of the trial court, the applicable time limits for nonjudicial foreclosure under a deed of trust are set forth in section 882.020, subdivision (a), and are unaffected by section 882.030. Because there are no material factual issues in dispute and the trial court's interpretation of the Act is an issue of law, we review its ruling de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

#### 1. The Legal Background

■ The beneficiary of a deed of trust ordinarily has two means to enforce the security interest provided by the deed. First, Code of Civil Procedure section 725a expressly grants the beneficiary the right to bring an action for judicial foreclosure "in the manner . . . of a mortgage upon such property." (Code Civ. Proc., § 725a; see *Field v. Acres* (1937) 9 Cal.2d 110, 112 [69 P.2d 422].) In addition, if the deed of trust contains an express provision granting a power of sale—as deeds of trust invariably do—the beneficiary may pursue nonjudicial foreclosure, often called a "trustee's sale," under the detailed regulatory provisions of sections 2924 through 2924*l*. (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777]; *Huene v. Cribb* (1908) 9 Cal.App. 141, 143–144 [98 P. 78] [power of sale must be express in the deed of trust].) Aside from the availability of this second remedy, deeds of trust have the same legal effect as a traditional mortgage. As a result, deeds of trust are often characterized as " 'practically and substantially only mortgages with a power of sale . . . .' " (*Monterey S.P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460 [261 Cal.Rptr. 587, 777 P.2d 623], quoting *Bank of Italy etc. Assn. v. Bentley* (1933) 217 Cal. 644, 657 [20 P.2d 940] (*Bank of Italy*).)

Historically, California law did not impose a time limit on nonjudicial foreclosure pursuant to a power of sale in a deed of trust. (E.g., *Bank of Italy,*

---

[2] Although defendant filed his notice of appeal from the order granting summary adjudication without waiting for or obtaining formal entry of judgment, the parties agree that we can and should treat the appeal as having been taken from a final judgment. (See, e.g., *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 6 [120 Cal.Rptr.2d 808] [deeming an order granting summary judgment to be amended nunc pro tunc to include an entry of judgment]; *Jones v. Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 799, fn. 1 [244 Cal.Rptr. 37] [deeming an order granting summary judgment an appealable final judgment].)

*supra,* 217 Cal. at p. 655 ["the statute of limitations never runs against the power of sale in a deed of trust"].) In 1872, the Legislature enacted section 2911, which states, "A lien is extinguished by the lapse of time within which . . . [¶] [a]n action can be brought upon the principal obligation." Although section 2911 was recognized as imposing a statute of limitations on *judicial* foreclosure of mortgages and other security interests (e.g., *Puckhaber v. Henry* (1907) 152 Cal. 419, 422–423 [93 P. 114]), the statute almost immediately was held *not* to apply to nonjudicial foreclosure under a deed of trust. (*Grant v. Burr* (1880) 54 Cal. 298, 301.) Retention of the right to nonjudicial enforcement was justified by the equitable principle that "courts will not help the debtor to recover pledged or encumbered property unless he pays his debt." (*Carson Redevelopment Agency v. Adam* (1982) 136 Cal.App.3d 608, 612 [186 Cal.Rptr. 615] (*Carson Redevelopment*).)

Code of Civil Procedure section 725a, which expressly authorizes judicial foreclosure of a deed of trust, was enacted in 1933. The Supreme Court thereafter recognized that section 2911 extinguished the right to bring an action under section 725a of the Code of Civil Procedure for judicial foreclosure of a deed of trust upon expiration of the statute of limitations on the underlying debt, but the court reaffirmed the principle that exercise of the right of nonjudicial foreclosure was not subject to any time limit. (*Flack v. Boland* (1938) 11 Cal.2d 103, 106–107 [77 P.2d 1090] (*Flack*).) This rule of law continued unchallenged until the 1982 passage of the Act. (E.g., *Carson Redevelopment, supra,* 136 Cal.App.3d at p. 611.)

■ There is no dispute that the Act overturned the historic rule. Chapter 2 of the Act, entitled "Ancient Mortgages and Deeds of Trust," contains a provision stating that "[u]nless the lien of a mortgage, deed of trust, or other instrument that creates a security interest of record in real property . . . has earlier expired pursuant to Section 2911," the lien becomes unenforceable, by exercise of a power of sale or otherwise, either 10 years from the "final maturity date or the last date fixed for payment" of the underlying debt or 60 years from the date of recording of the security instrument. (§ 882.020, subd. (a).)[3] Subsequent decisions have applied section 882.020 to impose a

---

[3] The full text of the initial portion of section 882.020 reads as follows: "(a) Unless the lien of a mortgage, deed of trust, or other instrument that creates a security interest of record in real property to secure a debt or other obligation has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale exercised, or any other means asserted after, the later of the following times: [¶] (1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the record, 10 years after that date. [¶] (2) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the record, or if there is no final maturity date or last date fixed for payment of the debt or performance of the obligation, 60 years after the date the instrument that created the security interest was recorded."

time limit on nonjudicial foreclosure under a deed of trust. (*Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304 [130 Cal.Rptr.2d 626] (*Nicolopulos*); *Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1708 [33 Cal.Rptr.2d 288] (*Miller*).) *Miller* held that section 882.020, subdivision (a)(2), permitted a power of sale to be exercised up to 60 years from the recordation of a deed of trust, rejecting the argument that the power of sale should be treated as a "lien" for purposes section 2911. (*Miller*, at pp. 1708, 1709.) *Nicolopulos* followed this interpretation of the Act in rejecting an attempt to shorten the time periods in section 882.020 through invocation of the doctrines of estoppel and laches. (*Nicolopulos*, at pp. 310–312.)

Although both *Miller* and *Nicolopulos* would appear to be controlling here, plaintiff argues that the analysis in those cases is incomplete because it did not include consideration of a further provision of the Act, section 882.030. The trial court accepted this argument, concluding that "[s]ince neither *Miller* nor *Nicolopulos* 'considered and passed upon' the application of section 882.030 in this context, they are not controlling authorities. [Citation.]"

### 2. The Impact of Section 882.030

Section 882.030 states: "Expiration of the lien of a mortgage, deed of trust, or other security interest pursuant to this chapter or any other statute renders the lien unenforceable by any means commenced or asserted thereafter and is equivalent for all purposes to a certificate of satisfaction, reconveyance, release, or other discharge of the security interest, and execution and recording of a certificate of satisfaction, reconveyance, release, or other discharge is not necessary to terminate or evidence the termination of the security interest. Nothing in this section precludes execution and recording at any time of a certificate of satisfaction, reconveyance, release, or other discharge." Plaintiff does not press the argument, rejected in *Miller,* that section 882.030 limits nonjudicial foreclosure because the power of sale is a "lien" that expires pursuant to section 2911. Rather, she bases her argument on the undisputed fact that, as noted above, the lien created by the right of *judicial* foreclosure under a deed of trust is extinguished under section 2911 upon the expiration of the statute of limitations. Applying the language of section 882.030, she argues that the expiration of that lien renders a deed of trust "unenforceable by any means commenced or asserted thereafter," thereby precluding nonjudicial enforcement as well. (§ 882.030.)

■ "When engaged in statutory construction, our goal is 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234] (*Coachella Valley*), quoting

*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) When doing so "we do not construe statutes in isolation; rather, we construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided." (*Coachella Valley*, at p. 1089.) Although courts are ordinarily instructed to give statutory words their usual, everyday meaning, "that rule has an important exception . . . . [W]hen a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19 [56 Cal.Rptr.2d 706, 923 P.2d 1]; see *Harris v. Lammers* (2000) 84 Cal.App.4th 1072, 1076 [101 Cal.Rptr.2d 361].)

Applying these principles, we find plaintiff's argument untenable for two distinct reasons. First, the language of section 882.030, when given the meaning assigned it in a century's worth of case law construing section 2911, does not support plaintiff's interpretation. Second, plaintiff's construction of section 882.030 would effectively impose a four-year time limit on the enforcement of powers of sale, thereby overriding the 10-year and 60-year time limitations so clearly established by section 882.020, subdivision (a), and rendering that subdivision largely pointless.

Turning first to the language of the statute, the impact of section 882.030 in these circumstances turns on the meaning of the word "lien." The section states that once "the lien" of a deed of trust has expired pursuant to the Act or any other statute, "the lien" becomes unenforceable by any means. Going back at least to *Flack* in 1938, and implicitly to *Grant v. Burr* in 1880, California law has treated "the lien" created by a deed of trust, as that term is used in section 2911, as including only the security interest enforceable through judicial foreclosure, while excluding the power of sale. An unbroken line of cases, continuing through *Miller,* has affirmed this principle.

Courts have squared this doctrine with the "seemingly uncompromising language" of section 2911 (*Carson Redevelopment, supra,* 136 Cal.App.3d at p. 611) by citation to "the anomalous nature of deeds of trust in this state." (*Bank of Italy, supra,* 217 Cal. at p. 657.) From the early days, California law treated traditional mortgages as establishing a security interest through imposition of a lien on the encumbered property, without affecting title to the property. In contrast, the execution of a deed of trust was deemed to establish a security interest by passing title to the encumbered property from the obligor to the beneficiary's trustee. (*Id.* at pp. 654–655.) Thus, the reference in section 2911 to a "lien" could be regarded as addressing the type of

security interest created by a traditional mortgage but not that created by the power of sale in a deed of trust. Because the Legislature amended section 2911 in 1945 without giving any indication that it disapproved of the courts' interpretation, we must assume that the Legislature concurred in this distinctive treatment of deeds of trust.[4] (See, e.g., *Coachella Valley, supra,* 35 Cal.4th at p. 1087 ["when the Legislature amends a statute without altering parts of the statute that have previously been judicially construed, the Legislature is deemed to have been aware of and to have acquiesced in the previous judicial construction"].)

 This judicial history has important implications for the proper interpretation of the language of section 882.030. Section 882.030 does not state that when "the lien" of an instrument creating a security instrument expires, "the security instrument" itself becomes unenforceable; rather, it states that when "the lien" of the instrument expires, "the lien" becomes unenforceable. In other words, section 882.030 precludes enforcement of the security interest that has been statutorily extinguished, not necessarily the entire instrument creating the security interest. As discussed above, the reference to a "lien" in section 2911 has invariably been construed not to include the power of sale, which was deemed to create its security interest through passing title rather than imposing a lien. Giving effect to this long-standing judicial understanding of the term "lien" in section 2911, section 882.030 must be construed as making unenforceable only the right of judicial enforcement under Code of Civil Procedure section 725a, the only interest that is extinguished by section 2911.

Plaintiff argues that the subsequent language of section 882.030, which states that extinction of the lien under section 2911 "is equivalent for all purposes to a certificate of satisfaction, reconveyance, release, or other discharge of the security interest . . . ," effectively extinguishes the power of sale. As she points out, the recording of a deed of reconveyance would unquestionably prevent enforcement of any power of sale in the original deed of trust. Like the language discussed above, however, this portion of section 882.030 is consistent with a legislative intent to extinguish only the security interest reached by section 2911, not the entire deed of trust. As noted, it states that extinction under section 2911 is equivalent to documents creating a discharge of the "security interest," not a discharge of the *instrument creating* the security interest. It adds nothing to plaintiff's argument.

---

[4] Prior to 1945, section 2911 read, "A lien is extinguished by the lapse of the time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation." (See *Flack, supra,* 11 Cal.2d at p. 106.) It was amended to its present form in 1945 without changing the substance of the language that the courts had construed as allowing the survival of the power of sale under a deed of trust. (See Stats. 1945, ch. 361, § 1, pp. 821–822.)

Our interpretation is consistent with the remaining language of section 882.030, which gives no hint that it was intended to work a dramatic change on the preexisting law governing powers of sale. The operative language relied on by plaintiff, "unenforceable by any means commenced or asserted thereafter," is only a portion of the statute. The predominant purpose of section 882.030 is served by the remaining text, which states that (1) extinguishment of a security interest as a matter of law shall have the same effect as the recordation of a "certificate of satisfaction, reconveyance, release, or other discharge of the security interest"; (2) the recordation of such a document is not necessary to terminate the security interest; and (3) the statute does not preclude the recordation of any of those documents. In other words, the bulk of section 882.030 is concerned with automatically removing the cloud on title otherwise created by a recorded but expired security interest. Save the phrase cited by plaintiff, nothing about the statute suggests it was intended to overrule a century of case law.[5]

Even if the language of section 882.030 were ambiguous, plaintiff's interpretation fails for the second and independent reason that its practical effect would be to replace the time limit of 10 or 60 years for the enforcement of a power of sale expressly established by section 882.020, subdivision (a), with a time limit of four years, thereby reducing that section to virtual surplusage.

As noted above, the goal of statutory interpretation is to discern and implement the purpose of the Legislature (*Coachella Valley, supra,* 35 Cal.4th at p. 1087), which requires reading every section of the statute " ' "in the context of the statutory framework as a whole." ' " (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141].) " 'Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' " (*In re Marriage of Harris*, at p. 222, quoting *People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].) Accordingly, courts must avoid a reading that (1) renders a portion of the statute meaningless (*Hassan v. Mercy American River Hospital, supra,* 31 Cal.4th at p. 723) or (2) leads to absurd consequences. (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1263 [8 Cal.Rptr.3d 532, 82 P.3d 740].) It is a safe assumption that in drafting a statute, the Legislature intends neither to include blocks of language with no function nor to create legal absurdities.

---

[5] Plaintiff argues that we should not construe the term "lien" in section 882.030 to refer solely to the type of security interest enforceable by judicial foreclosure because such a limitation is inconsistent with the use of the same term in section 882.020, subdivision (a), in which "lien" is used more broadly. We decline to adopt plaintiff's argument merely to avoid an inconsistency because, as explained above, the remaining language of section 882.030 indicates no intent to overturn the long-standing interpretation of "lien" as that term is used in section 2911 and, as explained below, adoption of plaintiff's argument would render section 882.020 virtual surplusage.

Plaintiff's interpretation would render subdivision (a) of section 882.020 virtual surplusage. As both *Miller* and *Nicolopulos* held, the language of section 882.020 indicates that the statute was intended to end the unrestricted enforceability of a power of sale in deeds of trust by placing a time limit of either 10 or 60 years, as applicable, on the power's enforcement. Under plaintiff's reading, the power of sale would become unenforceable at the same time the right of judicial foreclosure is extinguished by section 2911. Because the right of judicial foreclosure is ordinarily extinguished four years after the final maturity date of the underlying obligation—that is, upon the expiration of the statute of limitations applicable to contracts in writing (Code Civ. Proc., § 337)—this interpretation would cause powers of sale to become unenforceable four years after the debt matured. The time limits of 10 and 60 years specified in section 882.020 would become irrelevant in nearly all cases.[6] The Legislature is unlikely to have intended to grant holders of a power of sale an enforcement period of either 10 or 60 years in one section, only to snatch it back with the next.

### 3. *The Statutory History*

Although our holdings on the language and structure of the Act make it unnecessary to consult the statutory history (*Bonnell v. Medical Board, supra,* 31 Cal.4th at p. 1261), we address that history because plaintiff cites it extensively in support of her interpretation.

The Act was derived from a recommended text drafted by the California Law Revision Commission (Law Revision Commission) in 1981. (Recommendation Relating to Marketable Title of Real Property (Nov. 1981) Cal. Law Revision Com. Rep. (1981) p. 402 (Commission Recommendation).) As recommended by the Law Revision Commission, the portion of the Act dealing with "Ancient Mortgages and Deeds of Trust"—current sections 882.020 through 882.040—contained an additional section, numbered section 882.010. Recommended section 882.010 unambiguously extinguished the rights to both judicial *and* nonjudicial foreclosure, expressly including powers of sale, upon the expiration of the statute of limitations applicable to the underlying obligation. (Commission Recommendation, at p. 436.) Recommended section 882.030, in turn, did not include the current language stating that expiration of the lien renders the lien unenforceable by any means; instead, it included only the latter portions of the current section addressing certificates of satisfaction and other documents indicating release. (Commission Recommendation, at p. 438.)

---

[6] While it is true, as plaintiff argues, that her reading might leave a few situations that are reached by section 882.020—such as when the statute of limitations had not run by the end of 10 years due to tolling, partial payment, or waiver—the overwhelming majority of security interests that have not "earlier expired pursuant to Section 2911" are powers of sale. As to these, her reading would render section 882.020 a nullity.

Had these provisions survived the Legislature unscathed, defendant's power of sale would clearly have been extinguished four years after December 1992. They did not. Although these provisions of the bill passed the Assembly essentially as recommended by the Law Revision Commission, they were amended by the Senate. On June 1, 1982, the Senate deleted recommended section 882.010 in its entirety, thereby eliminating the provision stating unambiguously that a power of sale terminated upon expiration of the statute of limitations. Slightly over a week later, by a separate amendment, the Senate inserted the present phrase containing "renders the lien unenforceable by any means" into section 882.030. There is no contemporary commentary that explains the purpose of these changes.

The authoritative commentary on the Act is the comment by the Senate Committee on Judiciary (Committee), published with the final bill. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2416 (1981–1982 Reg. Sess.) p. 11018 (Committee Comment).) The Committee Comment on section 882.020 states that "[s]ection 882.020 prescribes a maximum time for enforcement of a mortgage or deed of trust. . . . The section limits the time for exercise of a power of sale under a deed of trust, reversing the rule of case law that such a power of sale 'never outlaws.' " (Committee Comment, at p. 11018.) This confirms the impression created by the language of the Act that section 882.020 was intended, in the form passed by the Legislature, to impose time limits on the exercise of powers of sale—in contrast to the original proposal, in which section 882.010 played that role.

The Committee Comment on section 882.030 makes no mention of an intent to reverse the long-standing lack of time limits applicable to powers of sale, as one would expect if plaintiff's interpretation accurately reflected legislative intent. Rather, the comment states only that "running of the enforcement period prescribed in Section 882.020 . . . or any other statute such as Section 2911 . . . has the effect of complete discharge of the mortgage or deed of trust; this reverses the rule that a mortgage or deed of trust barred by the statute of limitations may be equitably enforced. [Citations.]" (Committee Comment, *supra*, at p. 11019.) Plaintiff argues that the Committee Comment's assertion that the running of the enforcement periods "has the effect of complete discharge of the . . . deed of trust" should be taken to indicate the Legislature's intent to foreclose enforcement of the entire instrument upon the expiration of any time limit. On the other hand, as defendant points out, because the Committee Comment expressly refers to the running of the enforcement period in section 882.020 as well as in section 2911, the Legislature could have intended that the time limits in both statutes would expire before the deed would be discharged. The language is consistent with either interpretation.

Accordingly, the legislative history is at most ambiguous. Aside from the reference in the Committee Comment to a complete discharge of the deed of

trust, there is little in the legislative history that supports plaintiff's interpretation. Further, it is nearly impossible to square her construction of the Act with the Legislature's *deletion* of a section of the original draft that unambiguously would have accomplished her purpose. Because nothing in the legislative history is sufficiently convincing to overcome the relatively clear language of sections 882.020 and 882.030, when interpreted in light of the judicial history of section 2911, the trial court's ruling that section 882.030 overrides the time limits of section 882.020, subdivision (a), must be reversed.

## B. *The Effect of Defendant's Recordation of a Notice of Default*

Plaintiff contends that even if defendant's power of sale did not become unenforceable through operation of section 882.030, it was subject to the 10-year time limit of section 882.020, subdivision (a)(1), rather than the 60-year time limit of subdivision (a)(2). Because the 10-year period expired more than a year before defendant sought nonjudicial foreclosure, he would be time-barred under subdivision (a)(1). Although the trial court found it unnecessary to reach this argument, it is appropriate for us to decide the question because it has been fully briefed by the parties, appears certain to arise on remand, and is an issue of law that can be decided on undisputed facts. (Code Civ. Proc., § 43; see *Cobbs v. Grant* (1972) 8 Cal.3d 229, 239 [104 Cal.Rptr. 505, 502 P.2d 1].)

Section 882.020, subdivision (a)(1), states that "[i]f the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the record," the beneficiary has 10 years within which to exercise a power of sale under a deed of trust, measured from that ascertainable final date. If the final date cannot be ascertained from the record, subdivision (a)(2) dictates application of a 60-year time period, measured from the recording of the deed of trust. It is undisputed that defendant's recorded deed of trust did not attach a copy of the underlying promissory note or otherwise indicate the maturity date of the obligation, nor did any other document recorded with respect to the property specify that date during the 10 years following maturation of the note in 1992. Defendant's notice of default, recorded more than 11 years after the maturity date, does indicate the final maturity date.

Plaintiff argues that the reference to "the record" in section 882.020 should be construed to include any document recorded with respect to a property. She therefore contends that once the notice of default was recorded, the final maturity date of the underlying note became "ascertainable from the record," thereby dictating application of the 10-year time limit and barring defendant's exercise of the power of sale. Defendant and amicus curiae argue that "the

record" should be restricted to the type of recorded documents, such as deeds, that provide constructive notice of their contents. We find it unnecessary in this case to determine the general meaning of "the record" because we agree with defendant that, in these circumstances, adopting plaintiff's construction would lead to an absurd result that could not have been intended by the Legislature.

The term "the record," undefined in the Act, does not have a commonly accepted definition, either in everyday life or in the law of real estate transactions. The parties assume that the term was intended to refer to recorded documents, a sensible assumption in light of the importance in real estate law of documents that have been officially recorded with the county. This meaning is consistent with the statute's requirement that the maturity date be "ascertainable," since recording with the county would make it possible for interested parties to determine the duration of a security interest solely on the basis of public records. (See *Miller, supra,* 26 Cal.App.4th at p. 1709 ["[t]he phrase 'ascertainable from the record' in section 882.020 can only mean what it says; i.e., the recorded document must contain the requisite information"].) While we agree that this interpretation is correct as far as it goes, it does not resolve the dispute between the parties because it provides no indication whether "the record" was intended to include all recorded documents, as plaintiff argues, or only documents "of record," as defendant argues. The unrestricted nature of the term "record" tends to support plaintiff's contention, but defendant and amicus curiae make a plausible argument that the term should be interpreted to refer only to recorded documents that provide constructive notice of their contents. (See *Stearns v. Title Ins. & Trust Co.* (1971) 18 Cal.App.3d 162, 169 [95 Cal.Rptr. 682] [not all recorded documents provide constructive notice of their contents].)

Because the plain language of the statute is inconclusive on this point, " ' "we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, . . . and the statutory scheme of which the statute is a part." ' " (*State v. Altus Finance* (2005) 36 Cal.4th 1284, 1296 [32 Cal.Rptr.3d 498].) The statutory history reveals that the language of subdivision (a)(1) and (2) of section 882.020 was taken unchanged from the Law Revision Commission's recommendation. (Commission Recommendation, *supra,* at p. 437.) The Senate's Committee Comment, which is also taken verbatim on this point from the recommended comment of the Law Revision Commission, does not explain the intended meaning of the phrase "ascertainable from the record." Instead, the Committee Comment seems to assume that the 10-year time limit will apply in all cases in which the underlying obligation has a fixed maturity date, without regard to the recordation of documents. The Committee Comment states: "Subdivision (a) adopts a 10-year maximum enforcement period after maturity of the obligation secured by the mortgage or deed of trust. . . . Subdivision (a) adopts a 60-year

maximum enforcement period after recordation of the security instrument in cases where the maturity date of the obligation cannot be ascertained from the record, *whether because the obligation provided no maturity date, because the maturity date is variable depending on facts not in the record, or because the obligation specifies no maturity date.*" (Committee Comment, *supra*, at p. 11018, italics added.) The possibility that the obligation itself might not be contained in the record is simply not considered. As a result, the Committee Comment provides no guidance for the situation in which, as here, a copy of the underlying obligation is not recorded with the county, making it impossible to ascertain the final maturity date from county records.

■ We therefore proceed to consideration of the more general " ' "statutory scheme of which the statute is a part." ' " (*State v. Altus Finance, supra*, 36 Cal.4th at p. 1296.) The exercise of the power of sale in a deed of trust "is carefully circumscribed by statute." (*Monterey S.P. Partnership v. W. L. Bangham, Inc., supra*, 49 Cal.3d at p. 460.) Under these statutes, the beneficiary of a deed of trust must record a notice of default prior to exercising a power of sale. (§§ 2924, 2924b; *U. S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 86 [116 Cal.Rptr. 44].) The contents of the notice of default are specified by section 2924. In addition to identifying the encumbered property, the notice of default must "contain[] a statement that a breach of the obligation for which the . . . transfer in trust is security has occurred, and set[] forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation . . . ."[7] (§ 2924.)

" 'A purpose of the required statement in the notice of default is to afford the debtor an opportunity to cure the default and obtain reinstatement of the obligation within three months after the notice of default as provided in section 2924c of the Civil Code. [Citation.]' [Citation.] The debtor is to be given enough information so the default can be cured. '[T]he statute is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches sufficiently substantial in their nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure.' [Citation.]" (*Little v. Harbor Pacific Mortgage Investors* (1985) 175 Cal.App.3d 717, 720 [221 Cal.Rptr. 59].) Because nonjudicial foreclosure is a "drastic sanction" and a "draconian remedy" (*Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 827, 830 [214 Cal.Rptr. 531]), " '[t]he statutory requirements must be strictly complied

---

[7] Section 2924c, subdivision (b)(1) also specifies the text of the notice of right to cure and reinstatement that must be included in every notice of default.

with, and a trustee's sale based on statutorily deficient notice of default is invalid.' " (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 211 [256 Cal.Rptr. 180], quoting *Miller v. Cote* (1982) 127 Cal.App.3d 888, 894 [179 Cal.Rptr. 753].)

While section 2924 does not expressly require a beneficiary to state the date on which the underlying obligation became due when recording a notice of default, there are times when a beneficiary will need to state that date in order to provide a complete description of the nature of the breach. The beneficiary runs a clear legal risk of invalidity by omitting that date when it is necessary for clarity. A vague description of the breach, such as the bare statement that "a payment was not made when due," fails to satisfy the statutory purpose of placing the obligor on sufficient notice of the nature of the breach to allow challenge or satisfaction. Further, unless the date on which a required payment was due is stated in the notice, the notice might not demonstrate that the breach is " 'sufficiently substantial in . . . nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure.' " (*Little v. Harbor Pacific Mortgage Investors, supra,* 175 Cal.App.3d at p. 720, quoting *Birkhofer v. Krumm* (1938) 27 Cal.App.2d 513, 523–524 [81 P.2d 609].)

With this background, it becomes clear that plaintiff's argument creates a serious dilemma for a beneficiary attempting nonjudicial foreclosure after more than 10 years have elapsed from maturity of the underlying debt. If the previously recorded documents do not disclose the final maturity date of the obligation, section 882.020, subdivision (a)(2), grants the beneficiary 60 years from the date of recording of the deed of trust to seek nonjudicial foreclosure. As a prerequisite to seeking nonjudicial foreclosure, however, section 2924 requires such a beneficiary to record a notice of default. Unless the beneficiary is willing to run a risk of insufficiency of notice, the notice of default will state the final maturity date in its description of the nature of the breach. Upon recordation of the notice of default, plaintiff's interpretation would instantly reduce the time for nonjudicial foreclosure from 60 years to 10 years, since recordation of the notice would make it possible to ascertain the final maturity date from the record. Because, under our hypothetical, those 10 years had already elapsed, recording the notice of default would deprive the beneficiary of nonjudicial foreclosure.

In other words, plaintiff argues that every beneficiary who is otherwise entitled to 60 years under section 882.020, subdivision (a)(2), and fails to seek nonjudicial enforcement within the first 10 years, will be entitled to the remaining years only until the beneficiary files the required notice of default,

at which time the beneficiary will retroactively be entitled to only 10 years, all of which has by definition elapsed. This argument creates a classic catch-22 by requiring a party seeking nonjudicial foreclosure to file a document, the notice of default, whose filing prevents the party from obtaining nonjudicial foreclosure. Statutes should be construed to avoid "the absurdity of creating [a] catch-22." (*Padres Hacia una Vida Mejor v. Davis* (2002) 96 Cal.App.4th 1123, 1133 [117 Cal.Rptr.2d 727]; see *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 987 [44 Cal.Rptr.2d 93] ["[t]o adopt appellant's reading of the statute would place a local agency in a 'Catch 22' quandary. . . . Surely the Legislature did not intend that absurd result"].)

Plaintiff argues that defendant could have avoided this absurdity by filing a "notice of intent to preserve the security interest" under the authority of section 882.020, subdivision (a)(3), thereby preserving his right to nonjudicial foreclosure beyond the 10 years of subdivision (a)(1).[8] While this may be true, there was no reason for defendant to believe that such a notice was necessary. Because the final maturity date of the underlying obligation was not ascertainable from the record, he would have presumed himself entitled to the full 60 years, not merely the additional 10 years gained through the filing of a notice of intent to preserve interest. Further, nothing in the statute suggests that a beneficiary who is otherwise entitled to the 60 years of section 882.020, subdivision (a)(2), must file a notice of intent to secure that entitlement. On the contrary, since filing a notice of intent to preserve interest is only effective for an additional 10 years beyond the time provided in subdivision (a)(1), its use is incompatible with the 60-year time limit.

In order to avoid a statutory absurdity, we hold that a notice of default under section 2924 that is recorded more than 10 years after "the last date fixed for payment of the debt or performance of the [underlying] obligation" does not constitute a part of the "record" for purposes of section 882.020, subdivision (a).[9]

---

[8] Notices of intent to preserve interest are provided for in sections 880.310–880.370. The form of the notice is set forth in section 880.340.

[9] Because of the narrow basis for our holding, we render no opinion about (1) the legal effect of a notice of default recorded before the expiration of 10 years; or (2) the effect of any other recorded document that discloses the final maturity date, regardless of its recordation date.

## IV. DISPOSITION

The trial court's grant of summary adjudication is reversed. The matter is remanded for further proceedings consistent with this decision.

Marchiano, P. J., and Swager, J., concurred.

A petition for a rehearing was denied January 25, 2006, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 12, 2006, S140909. Werdegar, J., did not participate therein.