Filed 2/4/16  Grill v. Burwell CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BENJAMIN GRILL, | B259272 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PC055535) |
| v. | |
| CLIFTON J. BURWELL et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stephen P. Pfahler, Judge.  Affirmed.

Orren & Orren, Tyna Thall Orren; and Richard D. Marks, for Plaintiff and Respondent.

Phillip K. Fife, for Defendants and Appellants.

\* \* \* \* \* \*

Defendant-appellant Clifton Burwell (Burwell) obtained a money judgment against plaintiff-respondent Benjamin Grill (Grill) in 1983 and recorded it as a judgment lien on Grill's home, but allowed the lien to expire in 2003. In 1985, Burwell became the assignee of a 1977 deed of trust on Grill's home that secured the same obligation underlying the money judgment. When Grill tried to sell his home in 2013, Burwell initiated nonjudicial foreclosure proceedings on the deed of trust. Grill sued for a judicial declaration that the expiration of the debt underlying the deed of trust also extinguished the deed of trust. The trial court preliminarily enjoined Burwell from proceeding with any foreclosure. Burwell appeals the injunction. We conclude that Grill has not shown he will likely prevail on his claim that the deed of trust is invalid, but has shown that he will likely prevail on his alternate claim that Burwell is trying to obtain repayment of a grossly inflated amount under the deed of trust. Because Burwell does not attack the trial court's conclusion that the balancing of the interim harms favors Grill, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Loan Guarantees

In 1976, Grill, Burwell, and Oded Sturman (Sturman) formed and became co-owners of Aqua Brain Manufacturing Corporation (Aqua Brain), which was formed to develop and market an automatic sprinkler control device. Aqua Brain took out a $125,000 line of credit from Barclay's Bank of California (Bank), secured by the personal guarantees of each co-owner and a deed of trust on each of their homes. The deeds of trust were recorded on March 18, 1977.

### II. Default on Line of Credit and Ensuing Litigation

In March 1977, Aqua Brain drew down $100,000 on the line of credit but by May 1977 ran into difficulty making repayments. The Bank foreclosed on Aqua Brain's assets in October 1977, but came up $18,890.62 short. This prompted two sets of lawsuits.

#### A. Lawsuits culminating in "the 1983 Judgment Lien"

Seeking the remaining deficiency, the Bank initiated a judicial foreclosure action against the deed of trust on Burwell's home. To avoid foreclosure, Burwell, in the fall of 1977, paid the outstanding $18,890.62; to obtain repayment of that amount, Burwell

2

cross-claimed against Grill and Sturman seeking contribution and equitable contribution. Burwell also cross-claimed for damages arising out of the alleged conversion of Aqua Brain's assets prior to the Bank's foreclosure. Grill and Sturman responded by filing cross-claims against Burwell for fraud, breach of fiduciary duty, intentional interference with a prospective business advantage, breach of a $40,000 promissory note, and rescission of assignment and patent rights. All of these claims were consolidated for trial along with a separately filed lawsuit by Burwell against Grill and Sturman regarding a number of promissory notes.

The jury in September 1982 rejected all of the claims brought by Grill and Sturman, and awarded Burwell a total of $193,332.61. Of that amount, $14,441.93 was awarded on Burwell's contribution claim against Grill (consisting of one-third the $18,890.62 ($6,296.87) plus interest).

Burwell recorded the abstract of judgment as a lien on Grill's property in August 1983 ("the 1983 Judgment Lien").

### B. Lawsuit culminating in "the 1985 Deed of Trust"

After Burwell paid the balance of Aqua Brain's debt but while the cross-claims between Burwell, Grill, and Sturman were still being litigated, the Bank, in 1981, filed an interpleader action seeking direction as to whom it should convey the deeds of trust on Grill's and Sturman's homes. The trial court ruled that the Bank should convey and assign the deeds of trustee to Burwell and his wife "in order to enforce their right to contribution and . . . to secure performance by [Grill and Sturman] of their respective Continuing Guaranties." Although the court issued its ruling in 1982, the Bank did not convey the re-assigned deeds of trust until January 1985; Burwell recorded them on January 30, 1985 ("the 1985 Deed of Trust").

## III. The Next Twenty Years

In 1986, Grill declared bankruptcy. As part of the bankruptcy, the bankruptcy court in 1991 set aside the 1983 judgment "except for . . . a judgment lien on [Grill's house] in the total amount of $37,676.46 and no more." The court also ruled that the 1985 Deed of Trust "secures an obligation . . . in the amount of $14,441.93 together with

3

interest thereon at the legal rate from January 11, 1983 until paid. Said deed of trust secures no other judgments or obligations." No one appealed the bankruptcy court's ruling.

In 1993, Burwell exercised his statutory right under Code of Civil Procedure section 683.180, subdivision (a) to apply for a renewal of the 1983 Judgment Lien for another 10 years—until 2003. The trial court granted Burwell's application but, noting that the 1983 Judgment Lien had been reduced by the bankruptcy court to $37,676.46, limited the judgment lien to that amount. Burwell did not appeal this ruling.

Burwell did not renew the 1983 Judgment Lien a second time, so it expired in 2003 pursuant to Code of Civil Procedure section 697.310, subdivision (b).

## IV. This Case

In May 2013, Grill sought to sell his home. While a prospective sale was in escrow, Burwell, in November 2013, filed a notice of default and election to sell under the 1985 Deed of Trust. The notice asserted that Grill owed $298,696.10. Less than a month later, Burwell's attorney wrote a letter demanding $633,187.60.

In March 2014, Grill sued Burwell (personally and as trustee for the Burwell Plumbing Company Profit Sharing Plan and Trust), Burwell's wife and others for (1) declaratory relief, (2) quiet title, (3) cancellation of the 1985 Deed of Trust, and (4) injunctive relief. Specifically, Grill sought a declaration that the expiration of the 1983 Judgment Lien extinguished the 1985 Deed of Trust and, alternatively, that the amount necessary to pay off the 1985 Deed of Trust is far less than the amounts Burwell was demanding. Grill also sought a preliminary injunction precluding foreclosure during pendency of his lawsuit.

In August 2014, the trial court granted Grill's motion for a preliminary injunction. The court concluded that Grill demonstrated "a reasonable probability" of succeeding on his claims because "there is a genuine dispute as to whether [Burwell] may foreclose on the [1985] deed of trust [when that deed of trust is] based on an underlying judgment which appears to be unenforceable [because] it has expired." The court further found that Grill "will suffer greater harm if [injunctive] relief is not granted [because the foreclosure

4

by Burwell would cause Grill to] lose his interest in [his] home" while the denial of an injunction would "delay[] [Burwell] slightly longer from recovering on a judgment which has been outstanding for decades." The court ordered Grill to post a $60,000 bond.

Burwell and his wife (collectively, Burwells) timely appeal.

## DISCUSSION

In deciding whether to issue a preliminary injunction, a trial court is (1) to "'consider the likelihood that the plaintiff will prevail on the merits at trial'" and (2) to "'weigh the interim harm to the plaintiff if the injunction is denied against the harm to the defendant if the injunction is granted.'" (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1033, quoting *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1138.) Where, as here, "the trial court addresses" both prongs, "an order granting or denying a preliminary injunction will be reviewed only for [an] abuse of discretion." (*City of Cerritos*, at p. 1033; *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.) The burden of proving an abuse of discretion rests with the appealing party. (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1047.)

Burwell does not on appeal challenge the trial court's balancing of the interim harms; his appeal instead assails the court's assessment of the merits of Grill's claims. Analytically, Grill's likelihood of prevailing turns on two questions: (1) can Burwell enforce the 1985 Deed of Trust at all; and, if so, (2) will Burwell be able to collect $298,696.10 or $633,187.60 on that deed of trust? The court answered the first question "no," and never reached the second. As we explain below, we disagree with the court's resolution of the first question, but conclude that Grill is likely to prevail on his claim for a judicial declaration that the 1985 Deed of Trust secures far less than the amounts Burwell seeks. Because we review a trial court's ruling and not its reasoning (e.g., *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12), we affirm the issuance of the preliminary injunction.

## I. Enforceability of the 1985 Deed of Trust

Grill offers two arguments in support of his claim that the 1985 Deed of Trust is no longer valid: (1) the 1985 Deed of Trust secured Grill's obligation to contribute to

5

Aqua Brain's debt, that obligation was reduced to judgment and to the 1983 Judgment Lien, and the expiration of that judgment lien in 2003 necessarily extinguished the deed of trust that secured that debt; and (2) even if the 1985 Deed of Trust is still viable, Burwell is barred from trying to collect on it because, under the "one form of action" rule, Burwell's decision to sue Grill for a money judgment waived Burwell's right to enforce the deed of trust.

### A. *Expiration of the 1983 Judgment Lien*

Grill's argument that the expiration of the 1983 Judgment Lien leads to the extinguishment of the 1985 Deed of Trust that secured that same debt rests on an extrapolation of two well-settled principles. First, "[t]he security interest created by a deed of trust [has been described] as the functional equivalent of 'a lien on the property.'" (*Jenkins v. JP Mortgage Chase Bank, NA* (2013) 216 Cal.App.4th 497, 508; *Monterey S.P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460 ["in practical effect, if not in legal parlance, a deed of trust is a lien on the property"].) Second, "[a] security interest cannot exist without an underlying obligation"; this is why "a mortgage or deed of trust is generally extinguished by either payment or sale of the property in an amount which satisfies the lien." (*Alliance Mortgage Co. v. Rothwelll* (1995) 10 Cal.4th 1226, 1234 (*Alliance Mortgage*); *In re Marriage of Walker* (2015) 240 Cal.App.4th 986, 996 [same].) Grill correctly notes that the 1983 Judgment Lien expired in 2003 because Burwell obtained a 10-year renewal in 1993 but not 2003. (Code Civ. Proc., § 683.180, subd. (a) ["(i)f a judgment lien on an interest in real property has been created pursuant to a money judgment and the judgment is renewed pursuant to this article, the duration of the judgment lien is extended until 10 years from the date of the filing of the application for renewal . . ."].) Because, Grill argues, the 1985 Deed of Trust was meant to secure the same debt that underlies the 1983 Judgment Lien and because a deed of trust operates like a "security interest [that] cannot exist without an underlying obligation" (*Alliance Mortgage*, at p. 1234), the expiration of the debt in 2003 consequently extinguished the 1985 Deed of Trust securing that debt.

Despite the superficial appeal of Grill's reasoning, the statutes specifically governing deeds of trust foreclose his argument. Deeds of trust may function like other liens of property, but they are distinct statutory creatures. As pertinent here, a deed of trust—unlike a judgment lien—may be enforced not only through a judicial foreclosure (Code Civ. Proc., § 725a), but also through nonjudicial foreclosure if the deed of trust so provides (Civ. Code, § 2924 et seq.). (*Ung v. Koehler* (2005) 135 Cal.App.4th 186, 192 (*Ung*).)

When a person enforces a deed of trust through judicial foreclosure, the deed of trust ceases to be enforceable as soon as the right to seek relief on the underlying debt expires. (Civ. Code, § 882.020, subd. (a) [creating exception to usual expiration date for deeds of trust under Civil Code section 2911]; § 2911 ["(a) lien is extinguished by the lapse of time within which . . . (¶) (a)n action can be brought upon the principal obligation"]; *Nicopolous v. Superior Court* (2003) 106 Cal.App.4th 304, 309 (*Nicopolous*) ["a civil action to foreclose a deed of trust may be barred under section 2911"]; see also *Ung*, *supra*, 135 Cal.App.4th at pp. 192-194 [noting that section 882.030, which provides that "(e)xpiration of the . . . deed of trust . . . renders the lien unenforceable," applies only when "the security interest [is] enforceable through judicial foreclosure"].) This rule dovetails with the rule governing judgment liens.

However, where, as here, a person enforces a deed of trust through a nonjudicial power of sale—a remedy unavailable with judicial liens—the rule governing the longevity of that power of sale is different. Until 1982, a nonjudicial power of sale "never expired." (*Nicolopous*, *supra*, 106 Cal.App.4th at p. 310 ["prior to 1982, . . . the power of sale under a deed of trust was never barred . . ."].) This rule had a straight-forward rationale: A debtor can remove a deed of trust from his title only by invoking a court's equitable power to quiet title; "'courts will not help the debtor to recover . . . encumbered property unless he pays his debt'"; thus, a deed of trust does not expire until the debt is paid. (*Ung*, *supra*, 135 Cal.App.4th at p. 193.) In 1982, our Legislature enacted the Mortgage Record Title Act (Act), Civil Code section 880.020 et seq. Among other things, the Act replaced the common law rule granting legal immortality to deeds of

7

trust with a statutory rule limiting their lifespan to 60 years from the "date the instrument that created the security interest was recorded" or, if it is sooner, 10 years after the "final maturity date or the last date fixed for payment of the debt or performance of the obligation" if that date "is ascertainable from the recorded evidence of indebtedness." (§ 882.020, subd. (a).)

In this case, the Bank recorded the deed of trust on Grill's house on March 18, 1977. Because the deed of trust did not state a "final maturity date," the 60-year rule governs its nonjudicial power of sale and the 1985 Deed of Trust will not expire until March 18, 2037. Because Burwell is pursuing a nonjudicial sale, it does not matter whether the time for him to sue on the underlying debt has expired. (*Ung*, *supra*, 135 Cal.App.4th at p. 193 ["(a)lthough (Civil Code) section 2911 was recognized as imposing a state of limitations on *judicial* foreclosure of mortgages and other security interests (citation), the statute almost immediately was held *not* to apply to nonjudicial foreclosure under a deed of trust"].) Consequently, it does not matter that Burwell has litigated the debt, obtained a judgment and judgment lien, and let that lien expire. If we were to bar recovery when a creditor litigates a debt to judgment but not when that creditor sits idle, we would not only create a perverse incentive for creditors *not* to litigate their debts to judgment, but would also create judicial exceptions to the Act by voiding a deed of trust prior to the Act's expiration date (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 158 [courts may not rewrite statutes]) and to the pre-Act rule by voiding a deed of trust without repayment (*Slintak v. Buckeye Retirement Co L.L.C., Ltd.* (2006) 139 Cal.App.4th 575, 584 [noting "equitable rationale" that a debtor "should not be able to quiet title against his or her encumbered property without first paying the underlying debt"]).

For these reasons, Grill is not likely to prevail on his claim that the expiration of the 1983 Judgment Lien extinguishes the 1985 Deed of Trust.

**B.      *Election of remedies under "one form of action" rule***

Grill alternatively argues that Burwell "elected" to sue him judicially for contribution and, under the "one form of action" rule, this election has waived his right to

foreclose on the deed of trust that secures the same debt. The "one form of action" rule is based on Code of Civil Procedure section 726, which provides in pertinent part that "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by [a] mortgage upon real property . . . ." (§ 726, subd. (a).) In *Walker v. Community Bank* (1974) 10 Cal.3d 729 (*Walker*), our Supreme Court construed the statute to mean that "where [a] creditor sues on [an] obligation and seeks a personal money judgment against the debtor without seeking therein foreclosure of such mortgage or deed of trust, he makes an election of remedies, electing the single remedy of a personal action, and thereby waives his right to foreclose on the security or to sell the security under a power of sale." (*Id.* at p. 733; see also *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997, fn. 4 (*Wozab*) [also applying section 726 to deeds of trust].)

We conclude that the one form of action rule does not apply in this case for one, and possibly two reasons. First, some courts have held that a nonjudicial foreclosure is not an "action" within the meaning of Code of Civil Procedure 726 based on language in *Walker*, *supra*, 10 Cal.3d 729 that "a private sale under the power contained in [a] trust deed is not a judicial foreclosure within section 726 . . ." (*Walker*, at p. 736, italics omitted). (See *Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1508, fn. 15; *Birman v. Loeb* (1998) 64 Cal.App.4th 502, 509.) Other courts have construed section 726 more broadly to reach beyond "actions" and thus to bar a creditor who previously pursued a personal action from nonjudicially setting off a debt (*Wozab*, *supra*, 51 Cal.3d at pp. 999-1000); this reasoning could be also extended to other nonjudicial acts, such as foreclosing on a debt. Under at least one line of authority, however, Burwell's nonjudicial foreclosure falls outside the one form of action rule entirely.

Second, and regardless of how the above-noted split of authority is resolved, Burwell never made the requisite election in this case. "By its terms, section 726 applies only where the creditor-*beneficiary* has brought an action against the debtor-*trustor* to recover a debt or to enforce some right secured by a deed of trust" and "does not apply in other situations." (*Passaini v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d

9

1496, 1506, italics added; cf. *O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 598 [creditor who sued for money judgment waived right to judicial foreclosure and debtor cannot waive this effect of section 726].) At the time Burwell brought his action for contribution, he was not a "creditor-beneficiary" of a deed of trust because the deed of trust was not assigned to him until years later in 1985. To be sure, the interpleader judgment entitling Burwell to assignment of the deed of trust was handed down in 1982 and the 1983 Judgment indicated that he was "subrogated" to the "all of the [Bank's] rights, remedies and securities." But neither judgment alters the fact that Burwell was not in a position to choose between suing or foreclosing on the deed of trust until the deed of trust was actually assigned to him in 1985; as a result, he never elected between the two. Indeed, the only action Burwell took with respect to the 1983 Judgment Lien after he became a "creditor-beneficiary" of the deed of trust in 1985 was to apply for a renewal of that lien in 1993, but that act merely prevented the nullification of actions he had taken before becoming a creditor-beneficiary. Our conclusion that Burwell's application for renewal does not trigger the one form of action rule is especially appropriate where, as here, the trial court's grant of that renewal specifically stated that "[n]either this judgment herein, nor any renewal therefore, shall affect the right or interest of [Burwell] with respect to [his] interest in the note and deed of trust."

For these reasons, we determine that Grill is unlikely to prevail on his claim that the 1985 Deed of Trust expired.

## II. Amount Secured by the 1985 Deed of Trust

Grill's claim for declaratory relief also seeks a declaration regarding the amount of debt Burwell may collect pursuant to the 1985 Deed of Trust. Grill is likely to prevail on that claim. The 1991 bankruptcy order confined the 1985 Deed of Trust to $14,441.93 "with interest therein at the legal rate from January 11, 1983 until paid." The legal rate of interest is 10 percent. (Code Civ. Proc., § 685.010, subd. (a).) That adds up to interest of $47,658.37 as of January 11, 2016, for a total amount due of $62,100.30, which is far less than the $298,616.10 and $633,187.60 Burwell is demanding.

Burwell justifies his higher figures on the ground that (1) the bankruptcy court's ruling was incorrect, and (2) he is entitled to interest at the rate specified in the underlying deed of trust (that is, prime interest rate plus four points, compounded annually) and to interest on attorney's fees as well as the underlying debt. We reject both arguments for the same reason: The bankruptcy court's ruling confined the 1985 Deed of Trust to the legal rate of interest on the debt alone; more to the point, that ruling became final nearly 25 years ago and cannot "be collaterally attacked in [a] state proceeding." (*Martin v. Martin* (1970) 2 Cal.3d 752, 762.)

Grill is likely to prevail on his claim for a judicial declaration that the 1985 Deed of Trust secures less than what Burwell now asserts. Because injunctive relief may be granted pending a judicial determination of the "amount upon which[a] foreclosure is based" (*Caruso v. Great Western Savings* (1991) 229 Cal.App.3d 667, 675-676), the trial court's grant of injunctive relief was appropriate.

## DISPOSITION

The order granting preliminary injunction is affirmed. Grill is entitled to his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                                                    HOFFSTADT

We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ

11