Filed 12/22/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSEPH TRENK et al., | B295434 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. PC058343) |
| v. | ORDER MODIFYING OPINION |
| MARYAM SOHEILI et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Appellants. | |

THE COURT:

It is ordered that the opinion filed herein and certified for publication on December 21, 2020, be modified as follows:

On page 2, add the following to the end of footnote 1:

We refer to Appellant Morteza Sohyly as "Sohyly." Counsel for Appellants has advised that Sohyly's last name should be spelled "Soheyly." The judgment and the caption and

body of the trial court's statement of decision use the spelling "Sohyly."  We therefore use that spelling in this opinion.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.


LUI, P. J.        ASHMANN-GERST, J.        HOFFSTADT, J.

Filed 12/21/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSEPH TRENK et al., | B295434 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. PC058343) |
| v. | |
| MARYAM SOHEILI et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Melvin D. Sandvig, Judge.  Affirmed.

Paul Kujawsky for Defendants and Appellants.

Joseph Trenk, in pro. per., for Plaintiffs and Respondents.

_____

Maryam Soheili and Morteza Sohyly (Appellants) appeal from a judgment quieting title to a house in Granada Hills owned by respondents Joseph and Dinah Trenk (the Residence).[1] Joseph Trenk is a lawyer who previously represented Sohyly. Sohyly sued him for malpractice, and the parties settled in 2003. Joseph agreed to pay $100,000 and executed a promissory note and a trust deed on the Residence to secure the obligation. Sohyly's sister, Maryam Soheili, was designated as the beneficiary of the trust deed. Dinah did not sign the deed or the note.

Joseph stopped regular payments on the note after 2003, and by 2018 he still owed about $75,000. Sohyly (through his sister) began nonjudicial foreclosure proceedings in January 2018. The Trenks then filed this lawsuit to clear title to their house, alleging that the trust deed was no longer enforceable. After a short trial, the trial court quieted title in the Residence in favor of the Trenks, ruling that both the statute of limitations and the Marketable Record Title Act (Civ. Code, § 880.020 et seq.) barred enforcement of the trust deed.[2]

Appellants argue that the 60 year time period for enforcement of a trust deed applies here under section 880.020, subdivision (a)(2). The Trenks dispute that claim, but also argue as an alternative ground for affirmance that the trust deed is

---

[1] For clarity, we refer to Joseph and Dinah Trenk by their first names. We refer to them collectively as the Trenks. No disrespect is intended.

[2] Subsequent undesignated statutory references are to the Civil Code.

2

unenforceable because Dinah did not sign it.  We agree with both arguments.

A power of sale in a trust deed is enforceable even if the statute of limitations has run on the underlying obligation. Because the trust deed here did not state the last date for payment under the promissory note, under section 882.020, subdivision (a)(2) Appellants would have 60 years to exercise the power of sale in the trust deed.

However, the power of sale is not enforceable for another reason.  The Residence presumptively is community property. Appellants did not rebut that presumption at trial.  Because Dinah did not execute the trust deed, she has the power to void it. Accordingly, we affirm the judgment.

## BACKGROUND

### 1.    The Settlement Agreement and Trust Deed[3]

Sohyly sued Joseph in 2001 for legal malpractice.  The parties settled that action in 2003.

The written settlement agreement obligated Joseph to pay Sohyly $100,000 over three years.  Joseph was to pay $10,000 upon execution of the settlement agreement, and then $2,500 per month for the next 36 months, beginning in May 2003.

Joseph also executed a zero interest installment note (Note).  The Note was for $200,000, but, like the settlement agreement, specified 36 monthly payments of $2,500.  The Note stated that "on receipt of 36 payments hereunder, any and all

---

[3] We summarize the facts as contained in the trial court's statement of decision and the settled statement, supplemented as appropriate by facts from the record that are not in dispute.

obligations evidenced by this note and trust deed shall be deemed fully satisfied."[4]  The Note was not recorded.

The Note was secured by a deed of trust (Trust Deed) with a power of sale for the Residence, where the Trenks had lived for 30 years.  The Trenks originally took title to the Residence as joint tenants and did not change the manner in which they held title "at any time after the recording of the deed."

The Trust Deed stated that it was provided for the purpose of securing a promissory note "in the principal sum of $200,000.00 . . . subject to settlement agreement."  The Trust Deed did not refer to the payment schedule under the settlement agreement or identify the date on which the Note was to be fully paid.  The Trust Deed identified Maryam Soheili as the beneficiary.

Only Joseph executed the Trust Deed.  Dinah testified that she was unaware of the Trust Deed until she received a "foreclosure letter" in January 2018.

## 2. Joseph's Default and the Initiation of Nonjudicial Foreclosure

Joseph made the initial $10,000 payment and six $2,500 payments from May 2003 through December 2003.  He paid

---

[4] The parties differed in their explanation for the $200,000 amount.  Appellants claimed in the trial court that the additional $100,000 was either a liquidated damages provision or an "alternative manner of performance" in lieu of interest on the $100,000 settlement amount.  Joseph claimed that Sohyly told him he wanted the $200,000 amount in the Note "as a means of protecting the equity in the collateral put up to support the payment of the settlement amounts."  The reason for the $200,000 amount in the Note is not material to this appeal.

nothing more until October 2017, when he made on additional payment of $2,500.

Joseph testified that Sohyly called him in October or November 2017 asking for payment. Joseph offered to resume monthly payments but Sohyly did not agree.

On January 4, 2018, Appellants recorded a notice of default and election to sell under the Trust Deed. The notice stated that Joseph owed $174,202 as of December 15, 2017.

The Trenks filed this action on March 5, 2018.

## 3.     Proceedings in the Trial Court

The Trenks' verified complaint alleged causes of action for quiet title, slander of title, cancellation of deed, and fraud. The complaint alleged that Joseph tendered $75,000 in full payment on the Note on January 5, 2018 (the day after the notice of default was recorded), but that Appellants refused the tender.

The complaint alleged that the four year statute of limitations under Code of Civil Procedure section 337 had expired on Joseph's obligation under the Note. It also alleged that the Trust Deed contains a "reference which makes the last date fixed for payment of the debt or the performance of the obligation . . . readily ascertainable."[5]

The Trenks first obtained a temporary restraining order and then moved for a preliminary injunction to prevent the trustee's sale of the Residence. The trial court granted the preliminary injunction, finding that there was a dispute about

_____

[5] As discussed further below, section 882.020, subdivision (a)(1) provides that a power of sale may not be used to enforce a lien after 10 years from the last date fixed for payment, if that date is "ascertainable from the recorded evidence of indebtedness."

5

the amount of money that Joseph owed on the Note and that an unjustified trustee sale would cause irreparable harm.

The case was tried to the court on October 15, 2018. The court found against the Trenks on their fraud claim, but found in their favor on their claims for quiet title and cancellation of the Trust Deed.

In its statement of decision, the trial court set forth findings that: (1) enforcement of the settlement agreement and Note are barred by the statute of limitations; (2) enforcement of the Trust Deed is barred by "both the statute of limitations and the Marketable Record Title Act"; and (3) Appellants did not commit fraud. The court also found that "[a]t all relevant times, Plaintiffs Joseph Trenk and Dinah Trenk held title to the property as joint tenants."

## DISCUSSION

1. **The 60-Year Time Limit on Enforceability Under Section 882.020, Subdivision (a)(2) Applies to the Trust Deed**

The Trenks argue that the Trust Deed was unenforceable because the statute of limitations had already run on enforcement of the Note. Alternatively, they argue that the 10-year enforcement period under section 882.020, subdivision (a)(1) applied to the power of sale in the Trust Deed. We disagree with both arguments.[6]

Under Civil Code section 882.020, "[u]nless the lien of a mortgage, deed of trust, or other instrument that creates a

---

[6] Because these arguments raise legal issues, we consider them de novo. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

6

security interest of record in real property to secure a debt or other obligation has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale exercised, or any other means asserted after, the later of the following times:  [¶] (1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the recorded evidence of indebtedness, 10 years after that date.  [¶] (2) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the recorded evidence of indebtedness, or if there is no final maturity date or last date fixed for payment of the debt or performance of the obligation, 60 years after the date the instrument that created the security interest was recorded."  (Civ. Code, § 882.020, subd. (a)(1)–(2).)[7]  Civil Code section 2911 in turn provides that a "lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure . . . [¶] 1. An action can be brought upon the principal obligation."

Thus, the interplay between sections 882.020 and 2911 precludes an action for judicial foreclosure to enforce a lien on real property after the statute of limitations on the secured obligation has run.  However, where a trust deed is involved, section 2911 applies only to the lien that is "enforceable through judicial foreclosure, and not the power of sale." (*Robin v. Crowell* (2020) 55 Cal.App.5th 727, 750 (*Robin*).)

---

[7] Section 882.020, subdivision (a)(3) also provides a means to extend the applicable time period by 10 years by recording a "notice of intent to preserve the security interest."

Judicial enforcement of a lien and nonjudicial enforcement though a power of sale are conceptually separate. A trust deed provides a beneficiary with two means of enforcement. First, under Code of Civil Procedure section 725a, a beneficiary under a deed of trust has "the right to bring suit to foreclose . . . in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage." When exercising this right, the beneficiary is enforcing a lien with "the same legal effect as a traditional mortgage." (*Ung v. Koehler* (2005) 135 Cal.App.4th 186, 192 (*Ung*).)

Second, if a deed of trust includes a power of sale, a beneficiary may exercise that power pursuant to the governing statutes apart from the judicial process. (*Ung, supra,* 135 Cal.App.4th at p. 192.) In exercising that power, the beneficiary is not enforcing a lien through judicial action but is invoking the beneficiary's authority to demand that the trustee of the property sell the property for the beneficiary's benefit. (*Id.* at p. 195; see *Grant v. Burr* (1880) 54 Cal. 298, 301 (*Burr*).)

Before section 882.020 was enacted in 1982, it was well established that the power of sale in a deed of trust was not extinguished when the statute of limitations governing the underlying obligation expired. (See *Burr, supra,* 54 Cal. at p. 301; *Ung, supra,* 135 Cal.App.4th at pp. 192–193.) Indeed, the rule was that "the statute of limitations never runs against the power of sale in a deed of trust." (*Bank of Italy Nat. Trust & Sav. Assn. v. Bentley* (1933) 217 Cal. 644, 655; *Ung*, at pp. 192–193.) The reason for this rule was the equitable principle that courts should not help a debtor recover encumbered property unless the debt is first paid. (*Ung*, at p. 193; *Burr*, at p. 301.) Consistent with this principle, our Supreme Court interpreted section 2911

8

to apply only to judicial foreclosure actions to enforce a lien on real property, and not to nonjudicial foreclosure under a deed of trust. (*Burr*, at p. 301; *Ung*, at p. 193.)

In 1933 the Legislature adopted Code of Civil Procedure section 725a, which authorizes judicial foreclosure under a deed of trust. Our Supreme Court subsequently held that Civil Code section 2911 precluded a trust deed beneficiary from pursuing judicial foreclosure when the statute of limitations had run on the secured obligation. (*Flack v. Boland* (1938) 11 Cal.2d 103.) But the court did not interpret Code of Civil Procedure section 725a to change the general rule that "the statute of limitations does not run against the power of sale in a deed of trust." (*Flack*, at p. 106.)

Thus, prior to the enactment of section 882.020 in 1982, judicial interpretation had established that the "lien" that is extinguished under section 2911 upon expiration of the statute of limitations is only the lien enforced through judicial foreclosure, not the "lien" enforced by a power of sale. (See *Ung, supra,* 135 Cal.App.4th at pp. 195–196 ["the reference in section 2911 to a 'lien' could be regarded as addressing the type of security interest created by a traditional mortgage but not that created by the power of sale in a deed of trust"]; see *Carson Redevelopment Agency v. Adam* (1982) 136 Cal.App.3d 608, 610–611 ["Despite its seemingly uncompromising language," section 2911 has always been interpreted in accordance with the principle that "the power of sale under a deed of trust is not barred, or 'never outlaws' "].)[8]

---

[8] Section 882.020 in places uses the term "lien" more broadly than just a lien that is subject to judicial foreclosure. In

9

The Legislature enacted section 882.020 in 1982 to change this rule that a power of sale under a deed of trust " 'never outlaws.' " (Legis. Com. com., Deering's Ann. Code (2005 ed.) foll. § 882.020, p. 102.) The Legislature did so by establishing the time limits set forth in subdivision (a) of that section. However, in making this change, the Legislature gave no indication that it intended to alter the long accepted judicial interpretation of the

---

explaining the time limits to enforce a deed of trust, the statute states in relevant part that "[u]nless the lien of a . . . deed of trust . . . has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by . . . power of sale exercised after . . . the later of the following times." (§ 882.020, subd. (a).) Thus, the "lien" addressed in the second clause of subdivision (a) clearly includes the lien enforced through a power of sale. The subdivision does not expressly state that the "lien" addressed in its first clause—i.e., the lien that could have "earlier expired pursuant to Section 2911" —is more narrow and excludes the lien enforced through a power of sale. However, when the Legislature adopted section 882.020 the law clearly was that a power of sale could not be extinguished through section 2911. We presume that the Legislature was aware of this judicial interpretation of section 2911 when it enacted section 882.020. (See *In re Greg F.* (2012) 55 Cal.4th 393, 407 ["The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute"].) Nevertheless, the Legislature did not amend section 2911. We therefore also presume that the Legislature did not intend to change the judicial interpretation of section 2911 by enacting section 882.020. (*Greg F.*, at p. 407 [" ' "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended" ' "], quoting *Estate of McDill* (1975) 14 Cal.3d 831, 837–838.)

scope of section 2911.  Thus, every case that has considered the issue has decided that section 882.020 preserved the rule that the expiration of the statute of limitations on a secured obligation does not extinguish the right to exercise a power of sale in a deed of trust.  (See *Robin, supra,* 55 Cal.App.5th at p. 750; *Ung, supra,* 135 Cal.App.4th 195–196; *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 309–311 (*Nicolopulos*); *Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707–1708 (*Miller*).)

The Trenks do not seriously contest this interpretation of section 882.020.  Rather, they argue that the 10-year limit on enforceability under section 882.020, subdivision (a)(1) should apply here because there is "direct privity and a familial relationship between the original party to the note . . . , settlement agreement . . . and the deed of trust."  The Trenks assert that the beneficiary of the Trust Deed—Sohyly's sister, Appellant Maryam Soheili—had "clear and actual notice of the nature and maturity date of the underlying obligation on which the [Trust Deed] was predicated."

This argument fails to acknowledge the clear language of section 882.020.  Section 882.020 expressly states that the 10-year time period applies only if "the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the *recorded* evidence of indebtedness."  (§ 882.020, subd. (a)(1), italics added.)  Alternatively, "[i]f the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the *recorded* evidence of indebtedness," the 60-year period applies.  (§ 882.020, subd. (a)(2), italics added.)

There is no ambiguity in this statutory requirement that a document stating the last date for payment of the underlying

11

obligation must be *recorded* for the 10-year period to apply. The requirement does not make any exception when there is actual knowledge of that date by the party that is exercising a power of sale. We must give effect to this requirement.

Cases that have considered the meaning of this provision have come to the same conclusion. In *Miller,* the trustor of a deed of trust argued that the 10-year period under section 882.020 applied because the recorded trust deed referred to an unrecorded promissory note that contained the date for payment. (*Miller, supra,* 26 Cal.App.4th at p. 1709.) The court rejected that argument, concluding that "[t]he phrase 'ascertainable from the record' in section 882.020 can only mean what it says; i.e., the recorded document must contain the requisite information." (*Ibid.*)[9] The court explained that "the purpose of the statute is not merely to give notice that the property is encumbered, but to provide a specific date for the expiration of the encumbrance." (*Miller*, at p. 1709; accord, *Nicolopulos, supra,* 106 Cal.App.4th at pp. 310–311; *Ung, supra,* 135 Cal.App.4th at pp. 201–204 [recorded document other than the notice of default itself must state the due date of the underlying obligation to trigger the 10-year period].)

Thus, actual notice of the date when an underlying obligation is due is not sufficient to trigger the 10-year period under section 882.020, subdivision (a). A recorded document must reveal that date.

---

[9] A 2006 amendment to section 882.020 replaced the phrase "ascertainable from the record" with "ascertainable from the recorded evidence of indebtedness." (See Assem. Bill No. 2624 (2005-2006 Reg. Sess.) § 1.)

12

The Note here was not recorded.  The Trust Deed was recorded, but it did not state the date when the final payment under the Note was due.  The 60-year period to exercise a power of sale under section 882.020(a)(2) therefore applied.

**2.      The Trust Deed Was Voidable Because Dinah Did Not Execute It**

The Trenks argue that if they owned their Residence as community property, the Trust Deed was "subject to set aside" because only Joseph executed it.  (See Fam. Code, § 1102, subd. (a) ["both spouses, either personally or by a duly authorized agent, are required to join in executing an instrument by which . . . community real property or an interest therein is . . . encumbered"].)  Appellants do not dispute the legal point, and agree that whether the Trenks owned their Residence as community property is the "critical question" in this appeal.

Appellants argue that the Residence in fact is not community property.  Appellants rely on the trial court's finding that "[a]t all relevant times, [Joseph and Dinah] held title to the property as joint tenants."  They cite the law that a spouse's interest in a joint tenancy is separate property that he or she may encumber without the other spouse's consent.  (*Raney v. Cerkueira* (2019) 36 Cal.App.5th 311, 320–321; *Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 650.)

Family Code section 760 provides that, "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."  This provision establishes a presumption affecting the burden of proof, which may be rebutted by a preponderance of the evidence.

13

(*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1103; *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400 (*Valli*).)

In *In re Brace* (2020) 9 Cal.5th 903 (*Brace*), our Supreme Court recently held that, for properties acquired after 1975, the presumption established by Family Code section 760: (1) applies to claims by third parties outside the context of marital dissolution proceedings; and (2) prevails over another, more general, statutory presumption that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title." (Evid. Code, § 662.) The court further held that, for properties acquired after 1985, the "titling of a deed" as a joint tenancy is not sufficient to show that the spouses intended that writing to convert community property into separate property. (*Brace*, at pp. 937–938.)

The court in *Brace* reached these conclusions in the course of answering a question posed by the Ninth Circuit. Our Supreme Court phrased that question as "whether the form of title presumption set forth in Evidence Code section 662 applies to the characterization of property in disputes between a married couple and a bankruptcy trustee when it conflicts with the community property presumption set forth in Family Code section 760." (*Brace, supra,* 9 Cal.5th at p. 911.)

This question arose in the context of determining whether a residence that a married couple acquired as joint tenants was community property and therefore within the reach of a bankruptcy trustee in the husband's bankruptcy case. (*Brace, supra,* 9 Cal.5th at pp. 911–913.) Our Supreme Court concluded that the form of the title as a joint tenancy did not rebut the presumption under the Family Code that the residence was community property. (*Id.* at p. 927.) The court also held that the

joint tenancy deed did not suffice to accomplish a transmutation of the residence from community to separate property. Rather, under Family Code section 852, subdivision (a), such a transmutation requires a written declaration expressly stating that "the character or ownership of the property is being changed." (*Brace*, at p. 938.)

The Trenks acquired the Residence in 1988 while they were married. Thus, under the holding in *Brace,* the fact that the Trenks took title to the Residence as joint tenants is not sufficient in itself to show that Joseph had a separate interest in the Residence that he could lawfully encumber with the Trust Deed.

Appellants acknowledge the holding in *Brace,* but argue that they met their burden to rebut the presumption that the Residence was community property. They argue that, because the trial court found that the Trenks "held title" to the Residence as joint tenants, we must affirm if that finding is supported by substantial evidence.

We agree that, had the trial court found that the Trenks owned the Residence in joint tenancy as separate property, we could reverse that finding only if it were unsupported by substantial evidence. However, the trial court's statement of decision did not announce such a finding. Rather, as discussed, the court found only that the Trenks "held title" to the Residence "as joint tenants."

Our Supreme Court made perfectly clear in *Brace* that the community property presumption in Family Code section 760 cannot be rebutted simply by the form of title in which a married couple holds property. (See *Brace, supra,* 9 Cal.5th. at p. 927 ["Family Code section 760 does not permit the community

15

property presumption to be rebutted simply by the manner in which a married couple takes title"].)  The court also clearly held that a "joint tenancy deed, by itself, does not suffice" to prove that a married couple has validly transmuted community property to separate property.  (*Id.* at p. 938.)  Thus, the trial court's finding that the Trenks "held title" to the Residence as "joint tenants" does not show that the court found that the Residence in fact was separate property.  At best, it is ambiguous on the point.

We resolve that ambiguity against Appellants.  Ordinarily the "doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*).)  The doctrine is "a natural and logical corollary to three fundamental principles of appellate review:  (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Ibid.*)  Even when a trial court issues a statement of decision, this doctrine applies if the statement of decision is ambiguous and the ambiguity was not brought to the trial court's attention.  (*Id.* at pp. 59–60; Code Civ. Proc., § 634.)

The record here does not contain any objection or request for clarification concerning the trial court's finding on the issue of title to the Residence.  Arguably that finding was not "necessary to support the judgment." (*Fladeboe, supra,* 150 Cal.App.4th at p. 58.)  The trial court apparently based its ruling on the erroneous belief that the statute of limitations barred nonjudicial enforcement of the Trust Deed rather than on the conclusion that the Residence was community property.  Nevertheless, it is

16

Appellants' burden to provide a record showing error. We decline to resolve the ambiguity in the trial court's statement of decision *against* the prevailing parties, particularly on an issue on which Appellants bore the burden of proof.

In any event, even if we were to assume that the trial court found that the Trenks owned the Residence in joint tenancy as their separate property, we would nevertheless affirm. The only evidence in the record that could possibly support such a finding is a portion of Joseph's testimony. As described in the settled statement, Joseph testified that he and Dinah "took title as joint tenants" and that "he had not changed the manner in which he and his wife held title to this property at any time after the recording of the deed."

But this testimony supports only the conclusion that the Trenks *held title* to the Residence as joint tenants. As discussed above, under the holding in *Brace* the manner in which a married couple holds title to real property is not sufficient in itself to rebut the statutory presumption that it is community property.[10]

Alternatively, Appellants claim that the Trenks failed to establish the necessary predicate facts for the community property presumption to apply. Appellants point out that there is no evidence in the record concerning the source of funds the

---

[10] Appellants also cite a declaration that Joseph provided in support of the preliminary injunction. The declaration states that Dinah did not sign the Trust Deed and that "her interest" in the Residence therefore cannot be foreclosed. This was not part of the evidence at trial. In any event, the testimony does not amount to a concession that Dinah's "interest" in the Residence was a separate joint tenancy interest rather than her interest in her community property rights.

Trenks used to acquire the Residence. Appellants argue that the presumption that an asset is community property only applies when there is proof that the spouses acquired the asset with community funds. Appellants cite *Brace* as authority for this proposition.

The court's decision in *Brace* does not support Appellants' interpretation. The court did not create a new community property presumption in that case, but simply held that the statutory presumption in Family Code section 760 applies outside the context of dissolution proceedings and takes precedence over the statutory presumption from the form of title. (See *Brace, supra,* 9 Cal.5th at pp. 928–929 ["In the absence of a statute that expressly restricts the applicability of the community property presumption to dissolution actions, we decline to engraft such a major limitation onto Family Code section 760"].)

Under the plain language of Family Code section 760, the presumption that particular property belongs to the community applies whenever the property is "acquired by a married person during the marriage while domiciled in this state." The statute does not contain any requirement that the source of funds used to purchase the property must be proved before the presumption applies. To the contrary: The law is clear that the presumption may be *rebutted* with proof that separate funds were used to purchase the property at issue. (See *Brace*, at p. 914 ["a spouse may *rebut* the Family Code section 760 presumption by tracing the source of funds used to acquire the property to separate property"], italics added.)

It is true that the court's opinion in *Brace* states in places that the presumption under Family Code section 760 applies when community funds are used to acquire property. (See, e.g.,

18

*Brace, supra,* 9 Cal.5th at p. 912 ["we hold that when a married couple uses community funds to acquire property with joint tenancy title on or after January 1, 1975, the property is presumptively community property under Family Code section 760 in a dispute between the couple and a bankruptcy trustee"].) However, those statements must be interpreted in the context of the question that the court actually decided.

As discussed above, a key part of the court's holding was that the community property presumption under Family Code section 760 could not be *rebutted* by the form in which title is taken. (See *Brace, supra,* 9 Cal.5th. at p. 927.) The court did not purport to add an additional requirement that the source of funds used to purchase property during a marriage must first be proved for the presumption to *apply* in the first instance. Indeed, the court quoted Justice Chin's concurring opinion in a prior case explaining that " '[t]he presumption, . . . that property *acquired during the marriage* is community, is perhaps the most fundamental principle of California's community property law,' reflecting the ' "general theory . . . that the husband and wife form a sort of partnership, and that property *acquired during the marriage* by the labor or skill of either belongs to both." ' " (*Brace* at p. 914, quoting *Valli, supra,* 58 Cal.4th at pp. 1408–1409 (conc. opn. of Chin, J.), italics added.)

Nor did the court disapprove prior decisions holding that the party who claims that property acquired during marriage is separate property must prove that claim by a preponderance of the evidence. (See *Valli, supra,* 58 Cal.4th at pp. 1399–1400; *In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1591.) We reject Appellants' suggestion that the court in *Brace* grafted additional requirements onto the statutory language of Family

Code section 760 and overruled numerous cases interpreting that section without expressly stating its intention to do so.

Moreover, there was no dispute in *Brace* that the property at issue had been acquired with community funds. Thus, the court did not need to decide whether the community property presumption in section 760 depends upon the use of community funds to purchase the property at issue. And, as discussed above, it did not purport to do so. An opinion is authority only for those issues that it actually considered or decided. (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1076.)

In framing its holding by including the assumption that property was acquired with community funds, the court in *Brace* focused on the specific question that it decided. The court held that the form of title does not itself rebut the community property presumption in Family Code section 760, while avoiding any diversion into the separate question whether the presumption might be rebutted through the alternative means of tracing the source of the funds. The court did not hold that tracing was required *before* the presumption could be applied.

We therefore conclude that Appellants failed to rebut the statutory presumption that the Trenks held the Residence as community property. Because Dinah did not execute the Trust Deed, that deed was voidable and the trial court properly canceled it.[11]

_____

[11] The Trenks make an additional argument that because the Trust Deed cannot be enforced, the Note is an unsecured debt that is barred by the statute of limitations. We do not reach the statute of limitations issue. The trial court did find the statute of limitations barred enforcement of the Note. However, that

**DISPOSITION**

The judgment is affirmed. Respondents are entitled to their costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.

---

finding is not relevant to this appeal. The only issue on appeal is the enforceability of the Trust Deed. Because of our conclusion that section 882.020 controls that issue, it is unnecessary to decide whether the Note may be enforced as an unsecured debt.

Moreover, although it certainly appears from the record that any potentially applicable statute of limitations would have run since the final payment on the Note was due in May 2006, Appellants have not sued on the Note. Appellants also did not need to address any potential tolling arguments in this case because they argued, successfully, that section 882.020 permitted nonjudicial foreclosure on the Trust Deed regardless of whether the statute of limitations barred enforcement of the Note. We therefore leave the question whether the Note is enforceable for future determination in the event that Appellants attempt to collect on the Note as an unsecured debt.